# IN THE COURT OF APPEALS OF IOWA

————————————

No. 26-0373
Filed April 29, 2026

————————————

**In the Interest of K.J., Minor Child,**

**N.P., Mother,**
Appellant.

————————————

Appeal from the Iowa District Court for Johnson County,
The Honorable Joan M. Black, Judge.

————————————

**AFFIRMED**

————————————

Michelle M. Jay of Bray & Klockau, P.L.C., Iowa City, attorney for
appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, attorneys for appellee State.

Sara Strain Linder of Linn County Advocate, Inc., Cedar Rapids, attorney
and guardian ad litem for minor child.

————————————

Considered without oral argument
by Greer, P.J., and Buller and Langholz, JJ.
Opinion by Langholz, J.

**LANGHOLZ, Judge.**

A two-year-old son was removed from his mother's custody after he tested positive for cocaine because the mother was using cocaine and marijuana while caring for him.[1] About eight months later—with no progress from the mother at addressing her substance-use, mental-health, and parenting issues—the juvenile court terminated the mother's parental rights. The son was placed in the custody and guardianship of the Iowa Department of Health and Human Services ("HHS") and continued living with his father in another state.

The mother appeals, arguing that termination is not in the son's best interest and the court should have instead entered a bridge order that would have retained her rights, including visitation, while placing the son in his father's physical care.

On our de novo review, we agree with the juvenile court. Given the mother's lack of progress, her limited contact with the son during the removal, and the son's success in a stable home with his father, we agree that termination of the mother's parental rights is in the son's best interest. And these same factors, along with the parents' high-conflict relationship, show that a bridge order would not have been appropriate here. We thus affirm the juvenile court's termination of the mother's parental rights.

## I.    Background Facts and Proceedings

The mother has had a long history with the child-welfare system. When she was a young child, her parents' parental rights were terminated,

---

[1] We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's order—is public. *Compare* Iowa Code § 232.147(2) (2025), with *id.* §§ 602.4301(2), 602.5110; *see also* Iowa Ct. R. 21.25.

and she was placed for adoption. Then, as a teenager, her adoption was disrupted, and she was again adjudicated as a child in need of assistance—receiving services until she became an adult. She became a mother to an older son with a different father in early 2016. And less than a month after his birth, he was removed from her custody after suffering life-threatening injuries in her care. Her parental rights to that son were terminated a year-and-a-half later in 2017.

This son came to the attention of HHS in May 2025 with reports that the mother was using cocaine while caring for the son—then two years old—and his older half-sister. The mother eventually admitted using marijuana and cocaine. And the son tested positive for cocaine ingestion. So the son was removed from the mother's custody in mid-June 2025 and eventually adjudicated as a child in need of assistance. [2]

Over the next eight months, the mother did not engage much with HHS. She did not consistently participate in visits with the son. Although she claimed to have completed an online substance-use evaluation to go to a "placement facility" that "didn't work out," she never provided any documentation to HHS or otherwise followed through on an evaluation or treatment. She admitted that she did not obtain a mental-health evaluation but said she had briefly participated in therapy before her therapist received a promotion and she did not seek a new therapist. Aside from some "babysitting" and "ride share" work early in the case, she was not employed. And as of the termination hearing, she did not have housing—she was "crashing . . . with friends momentarily" and seeking housing in Missouri.

---

[2] The son's half-sister was also removed from the mother's custody and placed in the custody of her father. As of the son's termination trial, her child-in-need-of-assistance proceeding was still pending.

Since his removal, the son was initially in foster care while awaiting an interstate compact home study assessing his possible placement with his father in Illinois. That study ultimately recommended the son's placement with the father. And after the mid-December 2025 permanency hearing, the court ordered the son be placed in the custody and care of his father, under the supervision of HHS. The son has been doing well with his father, who has also kept the son in touch with the foster family.

After a late-January 2026 termination hearing, at which the guardian ad litem also supported termination, the juvenile court terminated the mother's parental rights to the son under paragraphs "e," "g," "h," and "i" of Iowa Code section 232.116(1) (2025). The court found that "the best interests of the child and his need for permanency can only be met by termination of his mother's parental rights." And the court explained:

> The Court is very sympathetic to [the mother]. It is very clear from the case files that [she] has been involved with "the system" for virtually most of her life. This fact presents various barriers to [the mother] actively participating in the CINA case. It is understandable to the Court why [she] would be distrustful of the Department and the "system" in general. However, it is not in this Court[']s purview to remedy past injustices. The Court must focus on the present and making [a] decision based on what is best for [the son].

The mother appeals, challenging only the best-interest determination and the court's decision not to enter a bridge order instead of terminating her parental rights.

## II.    Best Interest of the Child

Terminating parental rights under Iowa Code chapter 232 follows a three-step process. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). First, the State must prove a statutory ground for termination. *Id.* Second, the State

4

must show termination is in the best interest of the child. *Id.* And third, the parent has the burden to show whether a discretionary exception applies that should preclude termination. *Id.*; *see also In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). We need not address any steps not challenged by a parent. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). And here, the mother challenges only the second step—the son's best interest. So we focus our analysis there. We review the juvenile court's decision de novo, giving "respectful consideration" to the court's factual findings, especially when based on credibility determinations. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

The best interest of the child is the "paramount concern in a termination proceeding." *L.B.*, 970 N.W.2d at 313. We consider both the son's long-range and immediate best interest. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). And we must give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *see also In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016).

We agree with the juvenile court that termination is in the son's best interest. Over the nearly eight months since the son was removed from her custody because of her cocaine and marijuana use, the mother did little to address her substance-use or mental-health concerns. She did not complete a mental-health evaluation or provide HHS any documentation to support her claims about participating in substance-use evaluation or treatment. She did not participate in requested drug testing. She only sometimes participated in visitation with the son—as of the January termination hearing, her last visit had been in October with only a brief informal meeting arranged by the foster family in early December. She was homeless and had

no regular employment. Meanwhile, the son was doing well in the custody and physical care of his father with the good prospect of that being a stable placement that provides permanency for him. So we affirm the juvenile court's finding that termination is in the son's best interest.

## III.    Bridge Order

The mother also argues that rather than terminating her parental rights, the court should have closed the child-in-need-of-assistance case with a bridge order placing the son in his father's physical care—and potentially sole legal custody—while still granting her visitation rights. *See* Iowa Code § 232.103A(1) (authorizing the juvenile court to "close a child in need of assistance case by transferring jurisdiction over the child's custody, physical care, and visitation to the district court through a bridge order" when certain criteria are met). One of the requirements for entering a bridge order is the court's determination "that the child in need of assistance case can safely close once orders for custody, physical care, and visitation are entered by the district court." *Id.* § 232.103A(1)(e). We must also consider the child's best interest. *See id.* §§ 232.116(2), 232.1. And we are mindful that "[e]ntry of a bridge order is not the preferred solution when there is long-standing discord between the parents." *In re I.L.*, 25-0477, 2025 WL 2538875, at *4 (Iowa Ct. App. Sep. 4, 2025); *see also In re W.H.*, No 24-2073, 2025 WL 708347, at *3 (Iowa Ct. App. Mar. 5, 2025) ("A bridge order, at bottom, requires two parents to work together to arrange custody, physical care, and visitation.").

Because of the mother's limited progress during this case, we cannot find that the case could safely close with a bridge order. Her visitation—which she had not recently been participating in—was still only supervised. So any bridge order would have to be so restrictive that it would serve little purpose but keeping the son in the middle of litigation rather than a stable

placement with his father. That is all the more problematic here given the mother and father's high-conflict and litigious relationship, making it unlikely—as the juvenile court found—that they could "effectively co-parent." And the probable continued discord between the parents that would come from entering a bridge order is not in the son's best interest.

We thus affirm the juvenile court's decision to terminate the mother's parental rights to the son rather than closing the case with a bridge order.

**AFFIRMED.**